Surisa Rivers (SBN 250868)
Caroleen Torossian (SBN 334792)
**RIVERS LAW, INC., APC**
2600 Foothill Blvd., Suite 203
La Crescenta, CA 91214
Phone: (818) 330-7012
Fax: (213) 402-6077
surisa@riverslawinc.com
caroleen@riverslawinc.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.H., a minor, by and through his guardians ad litem, L.H.,<br><br>                    Plaintiff,<br><br>        v.<br><br>HESPERIA UNIFIED SCHOOL DISTRICT; JOSELYNE CALDERON; KRISTA CARTER; and DOES 1 TO 10, inclusive.<br><br>                    Defendants. | Case No.: 5:22-cv-00365<br><br>Complaint For Damages For Violations of:<br>1. Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*.;<br>2. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.;<br>3. Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq*.;<br>4. 42 U.S.C. § 1983 (Equal Protection Clause of the 14th Amendment);<br>5. 42 U.S.C. § 1983 (Due Process Clause of the 14th Amendment);<br>6. California Disabled Persons Act, Cal Civ. Code § 54, *et seq*.;<br>7. Cal. Educ. Code § 49005;<br>8. Cal. Educ. Code §§ 200, 201, 220 and 262.4;<br>9. False Imprisonment;<br>10. Negligence; and<br>11. Negligent Supervision<br>**Demand for Jury Trial** |

## JURISDICTION AND VENUE

1. The first two claims alleged herein arise under the Americans with Disabilities Act (42 U.S.C. §§ 12131 *et seq*.) ("ADA"), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 *et seq*.) ("Section 504"), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Through the same actions and omissions that form the basis of Plaintiff's federal claims, Defendant has also violated Plaintiff's rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Jurisdiction and venue are proper under 20 U.S.C. § 1391(b) because the Arvin Union School District ("the District" or "Defendant") is located within Kern County and all the acts and/or omissions giving rise to the claims in this action occurred in Kern County, which is located within the geographical boundaries of the judicial district for the United States District Court for the Central District of California.

## PARTIES

3. Plaintiff A.H. ("Plaintiff" or "A.H.") is currently seven years old and resides in Oak Hills, California, which is located within San Bernardino County. Plaintiff is a qualified individual with a disability within the meaning of the ADA, Section 504, the Unruh Civil Rights Act and all other nondiscrimination statutes.

4. The District is a public school district organized and existing under the laws of the State of California, located within San Bernardino County. At all times relevant herein, Defendant was responsible for providing Plaintiff with full and equal access to its public education programs and activities incompliance with the requirement of state and federal law. Defendant receives both state and federal financial assistance.

5. JOSELYNE CALDERON ("Defendant CALDERON") is employed by the DISTRICT as an aide. As Behavior Intervention Implementation Specialist, JOSELYNE CALDERON, had authority and control of the classroom, including policies, practices, procedures, facilities, maintenance, programs, activities, and services within the classroom. As Plaintiff's aide, JOSELYNE CALDERON was responsible for ensuring

that they comply with state and federal laws. Defendant CALDERON, upon information and belief, intentionally and unlawfully secluded and imprisoned Plaintiff for no pedagogical purpose. Defendant CALDERON is sued herein in her individual and official capacity.

6. KRISTA CARTER ("Defendant CARTER") is employed by the DISTRICT as an aide. As Plaintiff's aide, KRISTA CARTER, had authority and control of the classroom, including policies, practices, procedures, facilities, maintenance, programs, activities, and services within the classroom. As Plaintiff's aide, KRISTA CARTER was responsible for ensuring that they comply with state and federal laws. Defendant CARTER, upon information and belief, intentionally and unlawfully secluded and imprisoned Plaintiff for no pedagogical purpose. Defendant CARTER is sued herein in her individual and official capacity.

7. Plaintiff is ignorant of the true names of the defendants named herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege the true names and capacities of said defendants when they have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that DOES 1 through 10, inclusive, have or claim to have an interest in the controversy at issue in this Complaint and/or need to be joined to this action to give effect to the relief sought herein.

## FACTS APPLICABLE TO ALL CLAIMS

8. Plaintiff is a seven-year-old bright child who has been clinically diagnosed with Autism Spectrum Disorder ("ASD") and Attention-Deficit/ Hyperactivity Disorder ("ADHD").

9. Plaintiff's medical diagnosis and his history of early childhood trauma often resulted in him feeling emotionally overwhelmed in the classroom and experiencing behavioral crises.

10. Plaintiff was found eligible for special education in March 2018 based on a speech and language disability with profound phonological delays. The District only

conducted a speech and language assessment and failed to assess relating to his behavioral and social/emotional needs.

11. Plaintiff's Guardian, L.H., expressed continuous concerns regarding Plaintiff's behavioral and social/emotional needs. Nevertheless, the District failed to offer appropriate assessments or goals apart from a speech goal to improve Plaintiff's speech intelligibility.

12. In addition, the District failed to offer Plaintiff a preschool placement, which it was obligated to do. Without the appropriate early intervention services, behavioral and social-emotional supports or placement, Plaintiff's disabilities went unaddressed during a crucial time in his development which required early intervention.

13. On or about February 6, 2019, per his guardian's request, the District held an IEP meeting for A.H. During the meeting, L.H. informed school personnel that Plaintiff had been kicked out of his Head Start program due to his behavioral needs and asked the District for an appropriate placement and supports and services for him to access his education.

14. During the February 6, 2019 IEP meeting, the District refused to offer Plaintiff a placement or allow him to access any District program despite his clear and obvious needs as a student with disabilities.

15. As a result of the District's continued failure to act, A.H. was denied a free and appropriate education to which he was entitled.

16. On August 14, 2019, the District held another IEP meeting to discuss his transition into kindergarten. During this meeting, L.H. and Plaintiff's uncle expressed their grave concerns with Plaintiff's behavior and constant need for redirection. Plaintiff's uncle expressed that Plaintiff had been kicked out of previous daycares due to serious maladaptive behaviors.

17. The IEP team offered Plaintiff a placement in a general education kindergarten without any behavioral support or services, such as aide support. L.H. disagreed with the District's offer because of safety concerns. In short, L.H. had strong

reason to believe that Plaintiff would not be safe within a large general education kindergarten classroom without any behavioral support or services. As a result, A.H. was not able to enroll within the District. Once again, A.H. was denied a free and appropriate education and/or meaningful access to his education by the District to which he was entitled.

18.     Without any other choice, L.H. enrolled Plaintiff at Pathways to College Charter School where he began his kindergarten year. Based on the Charter school representations and offer of support, L.H. believed Plaintiff could attend school safely within the Pathways program.

19.     Unfortunately, Pathways Charter School did not have sufficient resources to support Plaintiff's maladaptive behaviors, causing him to be disenrolled by October 2019.

20.     On or about October 23, 2019, Plaintiff was enrolled at Lime St. Elementary School within the District.

21.     On or about November 12, 2019, the District met for a 30-day IEP. The IEP team reported that Plaintiff was struggling, among other things, with behavioral issues.

22.     Despite Plaintiff's significant communication delays and lack of progress with his behavior, the District once again failed to offer adequate behavioral support services to allow him to access his education.

23.     As a result, from October to November 2019, L.H. was contacted on numerous occasions to pick up Plaintiff from school due to his maladaptive behaviors. During this time, Plaintiff was denied equal access to his school based on his disability-related behaviors as he often had to go home early.

24.     On November 12, 2019, the District held an IEP to discuss Plaintiff's continuing behavioral issues. Although the IEP team requested a Functional Behavioral Assessment (FBA) to determine needed changes to his behavior support plan, no steps were taken (once again) to conduct the needed FBA and the District failed to offer a 1:1 aide pending the needed evaluation.

25. From November 2019 until January 2020, L.H. was called numerous times by school personnel and required to pick up Plaintiff early from school because school personnel were not able to manage his behaviors.

26. The District finally assigned Plaintiff an aide in January 2020 and initiated the FBA that was well overdue.

27. On January 22, 2020, Creative Home Programs, a non-public agency, conducted an FBA and developed a Behavior Intervention Plan ("BIP").

28. Again, based the District's deliberate indifference towards A.H.'s right to meaningful access his education and right to a free and appropriate education, the District assigned untrained and inexperienced aides to supervise A.H. at school.

29. On or about January 28, 2020, Plaintiff informed L.H., for the first time, that he was being kept in a bathroom by his aides, Defendant Calderon and Defendant Carter, for being bad.

30. Defendant Calderon and Defendant Carter admitted to placing Plaintiff in a school bathroom for non-pedagogical purposes during the 2019-2020 school year.

31. L.H. reported the abuse to the school and asked the District to investigate and take the necessary steps to ensure it discontinued.

32. L.H. allowed Plaintiff to return to his school believing the District had taken the necessary steps to ensure Plaintiff's safety and well-being at school.

33. However, on or about March 2, 2020, Plaintiff arrived at his private daycare afterschool program with dried up tears and visibly upset. When asked why he had been crying, Plaintiff responded, "they put me in the bathroom. They locked me in the bathroom."

34. Thereafter, L.H. was left without any other choice but to disenroll Plaintiff from the District.

35. Although L.H. was consistent in reporting complaints to the school and law enforcement, the District acted with deliberate indifference towards Plaintiff and denied him a safe place for school. As a result, Plaintiff was denied equal and meaningful access

to his education and suffered from disability-related discrimination and abuse from (at least) January 2020 until March 2020 at Lime Street Elementary School.

36. Consequently, Plaintiff suffered and continues to suffer severe emotional distress and fear relating to his time at Lime Street Elementary School.

37. Plaintiff also lost substantial educational opportunity based on the District's denial of meaningful access to its educational program as described above.

**Plaintiff's Compliance with California Tort Claims Requirement**

38. On February 24, 2021, Plaintiff sent a Claim for Damages to the District ("Tort Claim Letter"), notifying the District of claims that are now set forth herein.

39. The District's due date to respond to Plaintiff's Tort Claim Letter was April 12, 2021. To date, Plaintiff has not received a response from the District.

40. Plaintiff has thus complied with the requirements of Government Code Section 910, *et seq.*

**FIRST CLAIM**

**AMERICANS WITH DISABILITIES ACT, DISCRIMINATION**

**42 U.S.C. §12131,** *et seq.*

**Against the District and DOES 1-10**

41. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

42. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a) (2).

43. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b) (1)-(2).

44.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

45.     Pursuant to Title II, public entities are required to provide meaningful access to their programs, services and activities. Among the requirements to provide meaningful access, public entities must modify their policies and procedures, when necessary, to accommodate disability related needs, also known as "reasonable accommodation." 28 C.F.R. §35.130(b)(7). Public entities cannot provide programs, services or benefits to a person with a disability that are not equal to those provided to others or deny a person with a disability the opportunity to participate in programs, services or activities. 28 C.F.R. §35.130(b)(1)(iii). Moreover, public entities are required to administer their programs, services and activities in the most integrated setting appropriate. *Id.* at §35.130(d).

46.     At all times relevant to this action, the District is a "public entity" within the meaning of Title II of the ADA and provides a program, service or activity to the general public.

47.     At all times relevant, including at the time of each alleged violation of the 504, Plaintiff was a qualified individual with a disability within the meaning of Section 504. Plaintiff's Autism Spectrum Disorder and Attention Deficit Hyperactivity Disorder (ADHD), substantially limits a variety of major life activities, including but not limited to, talking, learning, concentrating, among others.

48.     At all times relevant, including at the time of each alleged violation of the ADA, the District provided services, programs and activities in its public schools, and was obligated to provide Plaintiff with reasonable accommodations that he needed in order to enjoy meaningful access to the benefits of a public education, and otherwise not exclude him from its educational program.

49.     The district acted in violation of Title II of the Americans with Disabilities Act through failing to provide a full and meaningful educational program, including by its failure to provide a learning environment free from abuse.

50.     Defendant's conduct described herein violated the ADA, in that Plaintiff, who is a student with disabilities, is either not provided programs, services, and activities that are provided to non-disabled students, or is provided programs, services, and activities that are not equal to, and are inferior to, the services provided to students who are not physically disabled. In fact, Plaintiff was abused because of his disabilities, which amounts to disability discrimination. Defendant has demonstrated a deliberate indifference that harm to Plaintiff's federally protected rights under the ADA was substantially likely and failed to act upon that likelihood.

51.     Accordingly, the District has violated Title II of the Americans with Disabilities Act, and Plaintiff thereon alleges that Defendant committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiff's rights.

52.     As a result of the foregoing, Plaintiff suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of meaningful access to the District's educational programs, including lost educational opportunity, as well as emotional distress, such as humiliation, depression, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and otherwise failure to provide access to its programs and services.

53.     Plaintiff seeks damages and attorneys' fees as a result.

**SECOND CLAIM**

**SECTION 504 OF THE REHABILITATION ACT OF 1973, DISCRIMINATION**

**29 U.S.C. § 794(a)**

**Against the District and DOES 1-10**

54.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

55.     Under Section 504, a qualified individual with a disability may not, solely by reason of his/her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving Federal financial assistance.  29 U.S.C. § 794(a).

56.     Under Section 504, the phrase "program or activity" includes a local educational agency.  29 U.S.C. § 794(b) (2) (B).

57.     Under Section 504, public entities are required to provide meaningful access to their programs, services and activities. Among other things, "the aids, benefits and services provided, must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 34 C.F.R. §104.4(b)(2). Further, public entities may not "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others," *Id.* at §104.4(b)(1)(iii) and may not "[d]eny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service." *Id.* at §104.4(b)(1)(i); *see also generally id. at* §104.4.

58.     Under Section 504, public entities are required to provide meaningful access to their programs, services and activities. Specifically, public education providers must ensure that elementary and/or secondary education services are provided in the most integrated setting appropriate. *Id*. at §104.34.

59.   In addition, "in providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess periods, and the services and activities set forth in §104.37(a)(2), a recipient shall ensure that handicapped persons

participate with nonhandicapped persons in such activities and services to the maximum extent appropriate to the needs of the handicapped person in question." *Id.* at §104.34.

60.     Further, schools are required to provide a Free Appropriate Public Education under Section 504, "regardless of the nature or severity of the person's [disability]." 34 C.F.R. §104.33(a). Districts are required to provide services "designed to meet individual educational needs of [disabled] persons as adequately as the needs of [nondisabled] persons are met." 34 C.F.R. §104.33(b). Schools are required to conduct an evaluation of any student who, because of a disability, needs or is believed to need special education or related services before taking any action with respect to the initial placement of the person in regular or special education and any subsequent significant change in placement. 34 C.F.R. §104.35(a).

61.     Under Section 504, public school districts are required to establish standards and procedures for the evaluation and placement of students who, because of a disability, need or are believed to need special education or related services, which ensure that tests and other evaluation materials, among other things, have been validated for the specific purpose for which they are used; are administered by trained personnel; and include those tailored to assess specific areas of educational need. 34 C.F.R. §104.35(b).

62.     In interpreting evaluation data and *in making placement decisions*, a public school district shall: "(1) draw upon information from a variety of sources, including aptitude and achievement tests, teacher recommendations, physical condition, social or cultural background, and adaptive behavior, (2) establish procedures to ensure that information obtained from all such sources is documented and carefully considered, (3) ensure that the placement decision is made by a group of persons, including persons knowledgeable about the child, the meaning of the evaluation data, and the placement options, and (4) ensure that the placement decision is made in conformity with § 104.34." 34 C.F.R. §104.35(c).

63. Furthermore, the public education provider must establish procedures for the periodic reevaluation of students who have been provided special education and related services. 34 C.F.R. §104.35(d).

64. At all times relevant, including at the time of each alleged violation of Section 504, the District received federal financial assistance as a public school.

65. At all times relevant, including at the time of each alleged violation of Section 504, Plaintiff was a qualified individual with a disability within the meaning of Section 504. Plaintiff's Autism Spectrum Disorder and ADHD, substantially limits a variety of major life activities, including but not limited to, talking, learning, and concentrating, among others.

66. The District acted in violation of Section 504 through failing to provide Plaintiff a learning environment free from abuse, which amounts to disability discrimination.

67. The District also violated Student's right to a FAPE under Section 504 based on its failure to offer him any school placement, prior to his kindergarten year; failure to evaluate him as required by Section 504 throughout the time the District was obligated to offer him a FAPE; failure to offer or provide appropriate behavioral and social/emotional support to allow him to access a District program prior to his enrollment at Lime Street Elementary; and failure to offer or provide appropriate behavioral and social/emotional support to allow him to access his education during his enrollment at Lime Street Elementary.

68. During all relevant times, the District knew of Plaintiff's need for services as required by Section 504 of the Rehabilitation Act and other statutes; and that by denying those services his rights would be violated. Yet, District employees continued to act in violation of his statutory rights for over a year with several opportunities during that timeframe to comply with these laws.

69. Accordingly, the District has violated Section 504, and Plaintiff thereon alleges that Defendant committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiff's rights.

70. As a result of the foregoing, Plaintiff suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of meaningful access to the District's educational programs, including lost educational opportunity, as well as emotional distress, including humiliation, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities.

71. Plaintiff seeks damages and attorneys' fees as a result.

## THIRD CLAIM

## UNRUH CIVIL RIGHTS ACT

## Against the District, CARTER and CALDERON and DOES 1-10

72. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

73. California's Unruh Civil Rights Act prohibits discrimination against individuals with disabilities and also prohibits discrimination based on a person's disability or perceived disability.

74. Section 51 of the California Civil Code provides, in relevant part: "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their…disability…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

75. Under the Unruh Act, "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section." Civil Code §51(f).

76. The Unruh Act holds liable anyone who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to" Section 51 of the California Civil Code for "each and every offense." Cal. Civ. Code § 52.

77. Defendant is a business establishment for the purposes of the Unruh Act.

78. Defendant denied, or aided or incited a denial of, or discriminated with respect to, Plaintiff's right by law to the full and equal advantages, accommodations, facilities, privileges and services associated with a public education.

79. Defendant's discriminating conduct was based on Plaintiff's disability.

80. Defendant also violated the Unruh Act by its failure to act in accordance with Federal and State laws designed to ensure that minors have free access to public schools and all of its benefits and privileges. The District acted in contravention to the laws that would otherwise have protected Plaintiff from the District's conduct.

81. The actions of Defendant constitute intentional discrimination against persons with disabilities and violate the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq*.

82. Student was unlawfully denied "full and equal accommodations, advantages, facilities, privileges, or services" from the District. The District thus violated the California Unruh Act with respect to Plaintiff.

83. As a result of the foregoing, Plaintiff suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of meaningful access to Defendant's educational programs, including lost educational opportunity, as well as emotional distress, including humiliation, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and its exclusion of Plaintiff.

84. Plaintiff seeks damages and attorneys' fees as a result.

85.     Pursuant to California Civil Code § 52.1(f), Defendant is liable to Plaintiff in an amount totaling no less than $4,000 for every violation of California Civil Code §51 et seq. or three times of actual damages.

## FOURTH CLAIM

**VIOLATION OF 42 U.S.C. SECTION 1983 – EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSITUTION**

**Against Defendants CARTER and CALDERON**

**in their personal capacity and DOES 1-10**

86.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

87.     Defendant's actions described herein have violated and continued to violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in that Plaintiff, who is a student with disabilities, is either not provided programs, services, and activities that are not equal to, and are inferior to, the services provided to students are not physically disabled.

88.     Defendant's actions described herein have violated and continue to violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in that Plaintiff was abused because of his disabilities, which amounts to disability discrimination.

89.     Defendant acted under the color of state law.

90.     As a proximate cause of the actions of Defendant herein, Plaintiff is entitled to an order and judgment enjoining Defendant from violating Plaintiff's rights to equal protection under the Constitution of the United States, a Declaration that Defendant's actions or omissions violate Plaintiff's rights to equal protection under the Constitution of the United States, Damages according to proof, Punitive Damages (from individual Defendant only), Plaintiff's reasonable attorneys' fees, Plaintiff's costs of suit incurred

herein, including expert fees and such other and further relief as the Court deems just and proper.

## FIFTH CLAIM

## VIOLATION OF 42 U.S.C. SECTION 1983 – DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSITUTION
### Against Defendants CARTER and CALDERON
### in their personal capacity and DOES 1-10

91.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

92.     Defendant's actions described herein constituted egregious conduct in the form of excessive use of physical force in violation of Plaintiff's Substantive Due Process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

93.     Defendant's actions described herein constituted force that was excessive, unjustified, and malicious in violation of Plaintiff's Substantive Due Process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

94.     Defendant acted under the color of state law.

95.     As a proximate cause of the actions of Defendant herein, Plaintiff is entitled to an order and judgment enjoining Defendant from violating Plaintiff's rights to equal protection under the Constitution of the United States, a Declaration that Defendant's actions or omissions violate Plaintiff's rights to substantive due process under the Constitution of the United States, Damages according to proof, Punitive Damages (from individual Defendant only), Plaintiff's reasonable attorneys' fees, Plaintiff's costs of suit incurred herein, including expert fees and such other and further relief as the Court deems just and proper.

## SIXTH CLAIM

### California Disabled Persons Act, Cal. Civ. Code §54 *et seq.*
### Against the District, CARTER and CALDERON and DOES 1-10

96.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

97.     The California Disabled Persons Act ("DPA) provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of…public facilities[] and other public places." Cal. Civ. Code §54(a); *see also* Cal. Civ. Code §54.1 (providing that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities … [and] places to which the general public is invited…."

98.     The DPA also provides that a violation of the ADA is a violation of the DPA. Cal. Civ. Code §§ 54(a), 54.1(a), §§ 54(c), 54.1(d).

99.     Defendants are entities covered by the DPA.

100.    Defendants have violated the DPA by, among other things, denying and/or interfering with Plaintiff's right to full and equal access to Defendants' public education programs and activities.

101.    Defendants have also violated the DPA by denying or aiding the denial of Plaintiff's rights to equal access under California state law and the ADA, among others.

102.    Plaintiff is entitled to statutory damages for each incident of discrimination, and reasonable attorneys' fees and costs incurred in bringing this action.

## SEVENTH CLAIM

### California Education Code § 49005

103. Plaintiff incorporates by reference the allegations contained in each of the foregoing graphs and incorporate them herein as if separately alleged.

104. California Education Code § 49005 states "[t]here is no evidence that restraint or seclusion is effective in reducing the problem behaviors that frequently precipitate the use of those techniques," and that "[r]estraint and seclusion may cause serious injury or long-lasting trauma and death, even when done safely and correctly." Cal. Ed. Code, § 49005, subds. (d), (e). California law further states, "[r]estraint and seclusion . . . do not further a child's education," but are "dangerous interventions . . . posing a great risk to child health and safety." (*Id*., subds. (a), (j).)

105. California Education Code § 49005.8(a) states in relevant part that states: (a) An Educational provider shall not do any of the following: (1) Use seclusion or a behavioral restraint for the purpose of coercion, discipline, convenience, or retaliation. (2) Use locked seclusion, unless it is in a facility otherwise licensed or permitted by state law to use as a locked room." Cal. Ed. Code, § 49005, subds. (a).

106. California Education Code § 49005.6 states in relevant part that "an educational provider shall avoid whenever possible, the use of seclusion or behavioral restraint techniques." Cal. Ed. Code, § 49005.6.

107. California Education Code § 49005.2 states that "Staff may only use restraint in an emergency and not for the purpose of coercion, discipline, convenience, or retaliation." Cal. Ed. Code, § 49005.2.

108. Plaintiff was and is an individual with a disability within the meaning of the California Education Code § 220 as defined by California Education Code § 210.1.

109. At all times relevant to this action, Defendant received financial assistance from the State of California.

110. As a direct and proximate result of Defendant's actions and omissions as described herein, Defendant has violated of California Education Code §49005, by unlawfully and intentionally secluding and restraining Plaintiff.

111.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

## EIGHTH CLAIM

### California Education Code §§ 200, 201, 220 and 262.4

### Against the District and DOES 1-10

112.   Plaintiff incorporates by reference the allegations contained in each of the foregoing graphs and incorporate them herein as if separately alleged.

113.   California Education Code § 200 states in relevant part that "[i]t is the policy of the State of California to afford all persons in public schools, regardless of their disability, . . . equal rights and opportunities in the educational institutions of the state."

114.   California Education Code § 201(a) states in relevant part that "[a]ll pupils have the right to participate fully in the educational process, free from discrimination and harassment."

115.   California Education Code § 220 prohibits, inter alia, discrimination on the basis of disability "in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid."

116.   California Education Code section 262.4 provides that the aforementioned provisions of the Education Code "may be enforced through a civil action."

117.   Plaintiff was and is an individual with a disability within the meaning of the California Education Code § 220 as defined by California Education Code § 210.1.

118.   At all times relevant to this action, Defendant received financial assistance from the State of California.

119.   As a direct and proximate result of Defendant's actions and omissions as described herein, Defendant has violated of California Education Code §§ 200, 201 and 220, by denying Plaintiff the benefits of, and unlawfully subjecting Plaintiff to discrimination under Defendant's services, programs and activities.

120.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

## NINTH CLAIM

## FALSE IMPRISONMENT

## Against Defendants CARTER, CALDERON, the District and DOES 1-10

121.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

122.   The District, Defendant CARTER, Defendant CALDERON and DOES 1-10 intentionally and unlawfully exercised force or the implied threat of force to restrain or confine Plaintiff when they committed the acts described herein.

123.   Each of the known unlawful restraints of Plaintiff described supra lasted for an appreciable amount of time.

124.   Plaintiff did not consent to the District, Defendant CARTER, Defendant CALDERON and DOES 1-10, and as a result of their acts suffered severe harm and emotional distress.

125.   California Government Code section 815.2 provides that a public entity is liable to injury proximately caused by an act or omission of an employee of the public entity within the scope of his or her employment.

126.   California Government Code section 820 provides that a public employee is liable for injury caused by his or her act or omission to the same extent as a private person.

127.   Defendants' harmful or offensive contact caused injury or harm to plaintiff.

128.   The District, a public entity, was at all relevant times the employer of Defendants CARTER, CALDERON, and DOES 1-10.

129.   Defendants CARTER and CALDERON and DOES 1-10 committed the acts described herein while acting within the scope of their employment with the District of educating, disciplining, and supervising Plaintiff.

130.    The District is therefore vicariously liable for the actions of its employee acting within the scope of his employment.

131.    As a direct and proximate result of the actions of Defendants herein, Plaintiff is entitled to damages according to proof, Punitive Damages (from individual Defendants only), Plaintiff's reasonable attorney fees, Plaintiff's costs of suit incurred herein, and such other and further relief as the Court deems just and proper.

## TENTH CLAIM

### NEGLIGENCE

### Against Defendants CARTER, CALDERON, the District and DOES 1-10

132.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

133.    At all relevant times, Defendants owed a duty of due care to Plaintiff.

134.    Defendants breached their duty, statutory and otherwise, to provide Plaintiff with a learning environment free from abuse.

135.    Defendants were aware of the probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences. Defendants knew, or should have known, it was highly probable that harm would result from their actions described herein.

136.    As the actual and proximate cause of Defendants' negligence, Plaintiff suffered physical abuse and severe emotional distress and continues to suffer severe emotional distress.

137.    California Government Code section 820 provides that a public employee is liable for injury caused by his act or omission to the same extent as a private person.

138.    California Government Code section 815.2 provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his or her employment.

139.    The District, a public entity, was at all relevant times the employer of Defendants CARTER, CALDERON and DOES 1-10.

140. Defendants CARTER, CALDERON and DOES 1-10 committed the acts described herein while acting within the scope of his/her employment with the District of educating, disciplining, and/or supervising Plaintiff.

141. The District is therefore vicariously liable for the actions of its employees acting within the scope of his/her employment.

142. As a direct and proximate result of the actions of Defendants herein, Plaintiff has and continues to sustain Damages according to proof.

## ELEVENTH CLAIM

## NEGLIGENT SUPERVISION

## Against the District and DOES 1-10

143. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

144. At all relevant times, Defendants owed a duty of due care to Plaintiffs to properly train and supervise all contractors, employees, and agents involved in Plaintiff's education. Part of Defendant's duty consists of ensuring that persons such as Plaintiff, who are entitled to accommodations, supports and services, receive those accommodations, supports and services in full and without incident, including retaliation for advocacy.

145. Defendant breached its duty of due care to Plaintiff by failing to properly train and supervise its employees while Plaintiff was on the District grounds during the intentional and unlawful battery, seclusion and imprisonment.

146. Defendant's breach of duty proximately caused and was a substantial factor in causing substantial emotional distress. Such damages were reasonably foreseeable to Defendants.

147. By virtue of Defendant's acts and omissions as alleged herein, Plaintiff is entitled to an award of compensatory damages, in an amount according to proof.

## WHEREFORE, Plaintiff prays for relief as follows:

## PRAYER FOR RELIEF

1. A finding that Defendant's conduct violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 *et seq.* ("Section 504"); and the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*, the California Disabled Persons Act, Cal. Civ. Code §§54 and 54.3, Cal. Educ. Code § 49005, Cal. Educ. Code § 200, Cal. Educ. Code § 201, Cal. Educ. Code § 220, as well as the torts pled herein.

2. Damages in an amount to be determined by proof, including but not limited to damages under 42 U.S.C. 12133, 29 U.S.C. §794(a), Cal. Civil Code §52, Cal. Civ. Code §§54 and 54.3, Cal. Educ. Code § 49005, Cal. Educ. Code § 200, Cal. Educ. Code § 201, Cal. Educ. Code § 220, Cal. Educ. Code § 262.4 and tort theories, including all applicable statutory damages;

3. Any other such damages as may be allowed under all the above federal and state laws;

4. For punitive damages (against individual Defendant CARTER and Defendant CALDERON only);

5. Plaintiffs' reasonable attorneys' fees and costs in this action, including, but not limited to, 42 U.S.C. §12205, 29 U.S.C. §794(b), Cal. Civil Code §52, Cal. Civ. Code §§54 and 54.3, and Cal. Code Civ. Proc. 1021.5.

6. Such other and further relief as the Court deems just and proper.


Dated: May 11, 2022                                    RIVERS LAW, INC., APC



                                        By: _____
                                              SURISA RIVERS
                                              CAROLEEN TOROSSIAN
                                              *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated:  May 11, 2022                                    RIVERS LAW, INC., APC


By:  _____
     SURISA RIVERS
     CAROLEEN TOROSSIAN
     *Attorneys for Plaintiff*